UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 5:11-CR-143

UNITED STATES OF AMERICA                                                           PLAINTIFF

v.                   **MEMORANDUM OPINION AND ORDER**

NAOMI JOHNSON, and
 EARL YOUNG                                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Naomi Johnson's and Earl Young's motions for a judgment of acquittal or a new trial under Federal Rules of Criminal Procedure 29 and 33. [DE 81 and DE 83]. For the following reasons, the motions are **DENIED**.

I.     **BACKGROUND**

Naomi Johnson and Earl Young, along with two co-defendants, were indicted for conspiracy to buy votes and vote buying in violation of 18 U.S.C. §§ 371, 1973i(c). [DE 1]. Naomi Johnson was indicted for conspiracy to buy votes in Count One and vote buying in Counts Two and Four. Earl Young was indicted for conspiracy to buy votes in Count One and vote buying in Count Four. Co-defendant Michael Salyers, the leader of the conspiracy and the candidate whom voters were paid to vote for, pleaded guilty to Count One, conspiracy to buy votes, and testified at trial. The second co-defendant, Jackie Jennings, pleaded guilty right before the start of trial and did not testify.

The Government presented evidence that during the early voting period of the May 2010 primary election, an abnormally large number of absentee votes were entered on May 3, 2010 in Breathitt County, Kentucky. In an attempt to discover illegal voting practices, the Government interviewed and offered immunity to all voters who voted in Jackson, Kentucky on May 3rd, 2010. Many voters admitted that they sold their votes, some to Michael Salyers, a candidate for magistrate

1

in Breathitt County. The jury heard testimony from Michael Salyers and six voters that Salyers paid to vote in the May 2010 primary election. The vote buying occurred in and around Salyers' Grocery store in Jackson, Kentucky. Michael Salyers owns the building that the store is located in, and Naomi Johnson operates the store. Salyers testified that vote buying is common in Breathitt County and people came to the store offering to sell their votes because the word on the street was that he was buying votes.

The vote buying scheme worked in one of two ways. In some instances voters came into the store offering to sell their votes. In other instances, conspirators solicited votes in exchange for money. Once the payment arrangements were made, Salyers would instruct someone to escort the voter(s) to the courthouse in downtown Jackson where early voting was taking place. The escort would then watch the voters vote, bring the voters back to the store and confirm to Salyers that they voted. Salyers would then take the voters to the back of the store or outside of the store and pay them $20-25 for voting. Salyers testified that Earl Young made approximately 3-5 trips escorting voters to the courthouse and was paid $5 for each trip. On some trips, Young walked with voters to the courthouse, and on other trips he drove voters to the courthouse in the voters' car. Young would escort the voters back to the store and confirm to Salyers they voted. Salyers testified that Naomi Johnson was present in the store when he paid voters, but he always paid voters in the back of the store or outside of the store.

On cross-examination by Johnson's counsel, Salyers testified that Johnson gave two voters a ride to the courthouse, but that he did not pay them to vote. Salyers also said that Johnson was unaware of the vote buying conspiracy taking place in and around the store. Salyers stated that Johnson was running the register and would not have been able to see what was going on in the back of the store. On cross-examination by Young's counsel, Salyers testified that he thought what he was doing with Young was legal vote hauling and did not think that Young knew he was paying voters.

The jury heard from voters who sold their votes to Salyers. Charles Allen Russell testified that he was asked by an older gentleman outside Salyers' Grocery if he wanted to make some money that day. Russell agreed and Naomi Johnson took him and some other voters to the courthouse in her minivan. Johnson told Russell that he would be paid $45 for voting and handed him a slip of paper with a slate of candidates that Russell was supposed to vote for. Michael Salyers was listed on the paper. After voting, Johnson drove Russell back to the store where he went into the back of the store with Salyers, who paid him $20 or $25 for voting.

The jury also heard testimony from Ray Darrell Hall and his wife, Stella Hall, who both testified that Michael Salyers paid them to vote. They were escorted to the courthouse by a young man who matched Young's description, but they did not identify Young as the man who escorted them. The young man watched them vote and confirmed to Salyers that they voted. In the back of the store, Salyers paid each of them $25 for voting.

Richard Moore testified that Salyers offered him $25 to vote. Moore said that Naomi Johnson was in the store with Salyers. Earl Young escorted Moore to the courthouse and stood 6-8 feet from him when he voted. Young walked Moore back to the store and confirmed to Salyers that he voted. Salyers then took Moore to the back of the store and paid him $25. On cross-examination, Moore testified that he never said that Naomi Johnson told him that they were buying votes. The jury also heard from Chris Fugate and David Stidham who both testified that Michael Salyers paid them to vote.

Finally, Michael Salyers testified again and said that the young blonde guy who escorted Ray and Stella Hall must have been Earl Young. On cross-examination by Johnson's attorney, Salyers reasserted that he never told Naomi what was going on, that he had no agreement with Naomi, and that he did not think that Naomi knew what was going on.

Both Defendants moved for a Rule 29 judgment of acquittal. The Court dismissed Count Two against Naomi Johnson because the Government presented no evidence that she participated in buying Richard Moore's vote. The Rule 29 motion was denied on all other counts. Neither Defendant testified or presented any evidence. The jury convicted Johnson on Counts One and Two and convicted Young on Counts One and Four.

**II.     ANALYSIS**

Fed. R. Crim. P. 29 allows the Court to set aside the verdict and enter an acquittal and Fed. R. Crim. P. 33 allows the Court to vacate a judgment and grant a new trial. Naomi Johnson seeks an acquittal or a new trial arguing that the willful blindness jury instruction violated her 5th Amendment right not to testify and that there was insufficient evidence to prove guilt. Earl Young moves for a judgment of acquittal or a new trial arguing that a vote hauling instruction should have been tendered to the jury as a defense theory, the willful blindness jury instruction was given in error and there was insufficient evidence to convict him.

**A.  Naomi Johnson**

1.  Willful Blindness Instruction

As Instruction Number 20, the Court gave the jury the willful blindness or deliberate ignorance instruction in the Sixth Circuit Pattern Jury Instructions § 2.09.  Johnson argues this instruction violated her Fifth Amendment right not to testify because there was no way for her to counter the instruction without testifying in her own defense. Johnson also argues that the instruction was improper because there was no evidence of Johnson's willful blindness.

The willful blindness instruction was properly included and correctly stated the law. The deliberate ignorance instruction can be used to asses a defendant's knowledge of the conspiracy. *United States v. Myint*, 455 F. App'x 596, 604 (6th Cir. 2012). The instruction should only be used

when there is "some evidence of deliberate ignorance." Sixth Circuit Pattern Jury Instructions § 2.09 Use Notes. Although the Government's primary theory against Johnson was direct knowledge of and participation in the conspiracy through the testimony of Charles Allen Russell, there was evidence of Johnson's deliberate ignorance of the vote buying conspiracy. Salyers testified that Johnson did not know about the vote buying conspiracy going on in and around her store. However, Johnson was at the store when Salyers paid voters in the back of the store or out front of the store. The evidence at trial was clear that Salyers' Grocery, a store that Naomi Johnson operated, was the epicenter of the vote buying conspiracy. The Government's strongest case against Johnson was Russell's testimony that Johnson was directly involved in the conspiracy, but there was evidence that she deliberately closed her eyes to the vote buying conspiracy going on all around her.

    Johnson argues that the deliberate ignorance instruction violated her Fifth Amendment right not to testify because "[t]he instruction placed undue coercion upon [her] to testify to rebut any assertion that she knew or should have known that criminal activity was occurring." [DE 81-1 at 3]. Johnson cites no cases to support this argument and the Court finds that it has no merit. Additionally, the instruction given did not permit the jury to find knowledge if the defendant "should have known that criminal activity was occurring." To find that a defendant knew something through deliberate ignorance, the jury "must be convinced beyond a reasonable doubt that a defendant was aware of a high probability that the co-conspirators were engaged in vote buying, and that a defendant deliberately closed his or her eyes to what was obvious. Carelessness, or negligence, or foolishness on his or her part is not the same as knowledge, and is not enough to convict." [DE 74 at 23]. The Sixth Circuit has approved of this language many times. *E.g. United States v. Beaty*, 245 F.3d 617, 622 (6th Cir. 2001); *United States v. Mari,* 47 F.3d 782, 785 (6th Cir. 1995); *United States v. Lee*, 991 F.2d 343, 349 (6th Cir. 1993).

Finally, even if the instruction was unsupported by sufficient evidence as to Naomi Johnson, "it is, at most, harmless error" because the instruction is an accurate statement of the law. *United States v. Beaty*, 245 F.3d 617, 622 (6th Cir. 2001) (citing *United States v. Mari*, 47 F.3d 782, 785 (6th Cir. 1995)); *see also Myint*, 455 F. App'x at 604.

    2. Sufficiency of the Evidence

Johnson argues that there was insufficient evidence for any reasonable juror to convict her because Charles Allen Russell's testimony lacked credibility. In evaluating a Rule 29 or 33 motion, the Court does "not reweigh the evidence, re-evaluate the credibility of witnesses or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Charles Allen Russell directly implicated Naomi Johnson in the vote buying conspiracy and Johnson asks this Court to re-evaluate his credibility and find that no reasonable juror could convict her based on Russell's testimony. The law does not permit this.

Accordingly, Naomi Johnson's motion for a judgment of acquittal or a new trial [DE 81-1] is **DENIED**.

    **B. Earl Young**

    1. Vote Hauling Instruction

Earl Young argues that the Court should have included a vote hauling instruction as a theory of the defense. "Kentucky . . . implicitly permits the practice of 'vote hauling.'" *United States v. Turner*, No. Crim. 05-02, 2005 WL 3434047, at *3 (E.D. Ky. Dec. 13, 2005). K.R.S. § 119.205(5) provides:

> Any candidate or committee, or any person on his behalf, who pays any person, including campaign workers, for transporting voters to the polls on the day of the election, shall make all payments by check. All payments, regardless of amount, shall be reported to the Registry of Election Finance in the manner that the Registry shall provide by administrative regulation. Any person who knowingly violates any requirement of this subsection shall be guilty of a Class B misdemeanor.

Young requested an instruction similar to the instruction this Court gave in *Turner*, 2005 WL 3434047 because Salyers testified that he paid Young to take voters to the polls and he thought what Young was doing was legal vote hauling.

"[W]hen a theory of the defense finds some support in the evidence *and in the law,* a defendant is entitled to some mention of that theory in the instructions." *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976) (emphasis added). The defendant is entitled to an instruction "[e]ven when the supporting evidence is weak or of doubtful credibility." *Id.*

Young's vote hauling theory of defense, however, has no support in the law. Earl Young can honestly believe he is legally hauling voters to the polls, but if those voters are being paid to vote, Young knows they are being paid to vote and Young assists in paying those voters to vote—Young is guilty of vote buying. *See United States v. Freed*, 401 U.S. 601, 612 (1971) (Brennen, J. concurring) ("If the ancient maxim that 'ignorance of the law is no excuse' has any residual validity, it indicates that the ordinary intent requirement—mens rea—of the criminal law does not require knowledge that an act is illegal, wrong or blameworthy."); *see also Staples v. United States*, 511 U.S. 600, 622 (1994) (recognizing that it is deeply rooted in the American legal system that ignorance of the law or a mistake of law is no defense to prosecution) (internal quotation marks omitted).

The defense theory jury instructions contemplated in *Garner* require "some support in the evidence" to support a valid legal defense. *See United States v. Johnson*, 416 F.3d 464, 467 (6th Cir. 2005) (holding that the defense must "be available as a matter of law"). In *Garner*, the disputed instruction was a self-defense theory. 529 F.2d at 970; *see also, United States v.* Theunick, 651 F.3d 578, 589 (6th Cir. 2011) (public authority defense); *Johnson*, 416 F.3d at 467 (duress); *United States v. Hopkins*, 151 F. App'x 448, 453 (6th Cir. Oct. 19, 2005) (duress); *United States v. McGory*, 1994 WL 562047, at *3-4 (6th Cir. Oct. 13, 1994) (per curiam) (withdrawal and entrapment); *United States v. Griffin*, 1987 WL 38962, at *3 (6th Cir. Nov. 16, 1987) (per curiam) (coercion).

7

Quite simply, Young's vote hauling defense is, at best, an "entrepreneurial theory" that is not "firmly entrenched" and "tests the limits of [the] lenient standard" for obtaining a defense theory instruction. *United States v. Larch*, 399 F. App'x 50, 57 (6th Cir. 2010). The failure to include a vote hauling instruction was not an error warranting a judgment of acquittal or a new trial. Moreover, "an omitted or incomplete instruction . . . is not as prejudicial as a misstatement of the law." *United States v. Hook*, 781 F.2d 1166, 1173 (6th Cir. 1986) (citing *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

It should be noted that Earl Young and Michael Salyers most certainly did not legally haul voters to the polls. In addition to not being legally required, a vote hauling instruction likely would have confused the jury and may have resulted in Earl Young being convicted for vote buying and conspiracy to buy votes because he violated Kentucky's vote hauling law. Earl Young was on trial for vote buying. Vote hauling, though permitted in Kentucky, is not a valid legal defense to vote buying.

    2. Willful Blindness Instruction

Earl Young argues that the willful blindness instruction should not have been given because the First Circuit's prerequisites for giving such an instruction were not met. *See United States v. Littlefield*, 840 F.2d 143, 147 (1st Cir. 1988). Michael Salyers testified that he bought votes and that Earl Young assisted him in buying votes by escorting voters to the polls, watching them vote, escorting them back to the store and confirming to Salyers that they voted. The key issue was whether Young knew he was assisting Salyers in buying votes. There was evidence that Young deliberately closed his eyes to the vote buying conspiracy that he was a part of.

As previously discussed, the willful blindness instruction was properly given under Sixth Circuit law and even if it was given in error, that error is, at most, harmless error. *Beaty*, 245 F.3d at 622.

3. Sufficiency of the Evidence

Earl Young argues that the Government did not provide substantial evidence of guilt beyond a reasonable doubt. There was a conspiracy to buy votes for Michael Salyers. Earl Young participated in and assisted that conspiracy by escorting voters to the polls and confirming to Salyers that they voted. The only contested issues were whether Young knowingly or willfully aided and abetted the vote buying or intended to help commit the crime of vote buying. There was sufficient evidence for the jury to infer that Salyers knew he was aiding and abetting vote buying and that he intended to help the conspiracy to buy votes.

Earl Young escorted voters on foot or in their own cars to the courthouse to vote. Each voter lived in Breathitt County their entire life and knew where the courthouse was located and how to vote. Earl Young did not assist anyone in voting. Earl Young, at the request of Michael Salyers, chaperoned voters to the polls to confirm that they voted. Young then escorted the voters back to the epicenter of the conspiracy, Salyers' Grocery, and confirmed to Michael Salyers that they voted. What possible reason is there to escort voters to a voting station when they already know where the courthouse is located and have transportation (car or on foot) to get there? Even if Salyers somehow assisted voters in getting to the courthouse, why did he have to watch them vote? And most importantly, why did he have to bring them back to the store and confirm to Salyers that they voted or "they're ok?" Young was paid for this service. Young provided no service to the individual voters. Obviously, Salyers paid Young for providing assistance to the vote buying conspiracy. There was sufficient evidence for the jury to conclude that Young knew he was assisting the vote buying conspiracy and even without the deliberate ignorance instruction, there was ample evidence at trial for the jury to convict Earl Young of vote buying and conspiracy to buy votes.

Accordingly, Young's motion for a judgment of acquittal or a new trial is **DENIED.**

**IT IS ORDERED:**

1) that Naomi Johnson's First Motion for a Judgment of Acquittal or in the Alternative Motion for a New Trial [DE 81] is **DENIED**; and

2) that Earl Young's Motion for Judgment of Acquittal or in the Alternative Motion for a New Trial [DE 83] is **DENIED.**

Dated this 1st day of June, 2012.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge