UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 5:11-CR-143

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                   **MEMORANDUM OPINION AND ORDER**

NAOMI JOHNSON, and
 EARL YOUNG                                                              DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on Naomi Johnson's and Earl Young's Motions for Release Pending Appeal. [DE 100; DE 110]. For the following reasons, the motions are **DENIED.**

I. BACKGROUND

Naomi Johnson and Earl Young, along with two co-defendants, were indicted for conspiracy to buy votes and vote buying in violation of 18 U.S.C. §§ 371, 1973i(c). [DE 1]. Co-defendant Michael Salyers, the leader of the conspiracy and the candidate whom voters were paid to vote for, pleaded guilty to Count One, conspiracy to buy votes, and testified at trial. The second co-defendant, Jackie Jennings, pleaded guilty right before the start of trial and did not testify.

At trial, the Government presented evidence that during the early voting period of the May 2010 primary election, an abnormally large number of absentee votes were cast on May 3rd, 2010 in Breathitt County, Kentucky. In an attempt to discover illegal voting practices, the Government interviewed and offered immunity to all voters who voted in Jackson, Kentucky on May 3rd, 2010. Many voters admitted that they sold their votes. Some sold their votes to Michael Salyers, a candidate for magistrate in Breathitt County. The jury heard testimony from Michael

Salyers and six voters that Salyers paid to vote in the May 2010 primary election. The vote buying occurred in and around Salyers' Grocery store in Jackson, Kentucky. Michael Salyers owns the building that the store is located in, and Naomi Johnson operates the store. Salyers testified that vote buying is common in Breathitt County and people came to the store offering to sell their votes because the word on the street was that he was buying votes.

The vote buying scheme worked in one of two ways. In some instances, voters came into the store offering to sell their votes. In other instances, conspirators solicited votes in exchange for money. Once the payment arrangements were made, Salyers would instruct someone to escort the voter(s) to the courthouse in downtown Jackson where the early voting took place. The escort would then watch the voters vote, bring the voters back to the store and confirm to Salyers that they voted. Salyers would then take the voters to the back of the store or outside of the store and pay them $20-25 for voting. Salyers testified that Earl Young made approximately 3-5 trips escorting voters to the courthouse and was paid $5 for each trip. On some trips, Young walked with voters to the courthouse, and on other trips he drove voters to the courthouse in the voters' car. Young would escort the voters back to the store and confirm to Salyers that they voted. Salyers testified that Naomi Johnson was present in the store when he paid voters, but he always paid voters in the back of the store or outside of the store.

On cross-examination by Johnson's counsel, Salyers testified that Johnson gave two voters a ride to the courthouse, but that he did not pay them to vote. Salyers also said that Johnson was unaware of the vote buying conspiracy taking place in and around the store. Salyers stated that Johnson was running the register and would not have been able to see what was going on in the back of the store. On cross-examination by Young's counsel, Salyers testified that he

thought what he was doing with Young was legal vote-hauling and did not think that Young knew he was paying voters.

The jury heard from voters who sold their votes to Salyers. Charles Allen Russell testified that he was asked by an older gentleman outside Salyers' Grocery if he wanted to make some money that day. Russell agreed, and Naomi Johnson took him and some other voters to the courthouse in her minivan. Johnson told Russell that he would be paid $45 for voting and handed him a slip of paper with a slate of candidates that Russell was supposed to vote for. Michael Salyers was listed on the paper. After voting, Johnson drove Russell back to the store where he went into the back of the store with Salyers, who paid him $20 or $25 for voting.

The jury also heard testimony from Ray Darrell Hall and his wife, Stella Hall, who both testified that Michael Salyers paid them to vote. They were escorted to the courthouse by a young man who matched Young's description, but they did not identify Young as the man who escorted them. The young man watched them vote and confirmed to Salyers that they voted. In the back of the store, Salyers paid each of them $25 for voting.

Richard Moore testified that Salyers offered him $25 to vote. Moore said that Naomi Johnson was in the store with Salyers. Earl Young escorted Moore to the courthouse and stood 6-8 feet from him when he voted. Young walked Moore back to the store and confirmed to Salyers that he voted. Salyers then took Moore to the back of the store and paid him $25. On cross-examination, Moore testified that he never said that Naomi Johnson told him that they were buying votes. The jury also heard from Chris Fugate and David Stidham who both testified that Michael Salyers paid them to vote.

Finally, Michael Salyers testified again and said that the young blonde guy who escorted Ray and Stella Hall must have been Earl Young. On cross-examination by Johnson's attorney,

Salyers reasserted that he never told Naomi what was going on, that he had no agreement with Naomi, and that he did not think that Naomi knew what was going on.

The jury convicted Johnson on count one for conspiracy to buy votes and count two for vote buying. [DE 76]. The jury convicted Young on count one for conspiracy to buy votes and count four for vote buying. [DE 77]. They were both sentenced to four months in prison and one year of supervised release. [DE 107; DE 108].

## II. ANALYSIS

"The Bail Reform Act, 18 U.S.C. § 3143(b) creates a presumption against release pending appeal." *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002). The Bail Reform Act requires the Court to make two findings before granting bail pending appeal. 18 U.S.C. § 3143(b). First, the Court must find that the convicted person will not flee or pose a danger to the community if granted bail. Second, the Court must find that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, a new trial, a sentence that does not include a term of imprisonment or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process. 18 U.S.C. § 3143(b); *United States v. Pollard*, 778 F.2d 1177, 1181 (6th Cir. 1985); *United States v. Osborne*, No. 1:06CR-06, 2007 WL 1741784, at *1 (W.D. Ky. June 11, 2007). "[A]n appeal raises a substantial question when [it] presents a close question or one that could go either way and . . . the question is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182 (internal quotation marks and citation omitted).

It is uncontested that neither Johnson nor Young pose a flight risk or a danger to the community. Their appeals are also not for the purpose of delay. Johnson and Young are not

entitled to bail pending appeal, however, because their appeals do not present a substantial question of law or fact likely to result in reversal, a new trial, or a reduced sentence to a term of imprisonment less than the expected duration of the appeal process.

    A. <u>Johnson's Appeal</u>

On appeal, Johnson will argue that the Court erred in denying her motion for acquittal or a new trial and that it was error to allow the willful ignorance instruction to go to the jury. These arguments do not raise a close question or one that could go either way for the reasons discussed in the Court's Memorandum Opinion and Order denying Johnson's motion for a new trial. [DE 94]. A brief summary here should suffice.

The government presented direct evidence, in the form of Charles Allen Russell's testimony, of Johnson's knowledge and participation in the vote buying conspiracy. Johnson argues that Russell's testimony lacked credibility, but this Court does "not reweigh the evidence, re-evaluate the credibility of witnesses or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Johnson also argues that it was error to allow the willful blindness instruction go to the jury. This argument does not raise a substantial question likely to result in reversal or a new trial because even if Johnson is correct that the instruction was given in error, "it is, at most, harmless error" because the instruction was an accurate statement of the law. *United States v. Beaty*, 245 F.3d 617, 622 (6th Cir. 2001) (citing *United States v. Mari,* 47 F.3d 782, 785 (6th Cir. 1995)); *see also United States v. Myint*, 455 F. App'x 596, 604 (6th Cir. 2012).

Accordingly, Johnson's appeal does not raise a substantial question of law or fact and her motion for release pending appeal must be **DENIED.**

B. <u>Young's Appeal</u>

Young will present two arguments on appeal—that the lack of a "vote-hauling" instruction and the inclusion of the "willful blindness" instruction were reversible errors. Again, Young's arguments and why they do not raise a substantial question of law are more fully discussed in the Court's Memorandum Opinion and Order. [DE 94].

Young requested a defense theory instruction that "vote-hauling" is legal in Kentucky. The Court did not give the requested instruction, because the defense theory has no support in the law. Even if Young honestly believed that he was vote-hauling, it is not a defense to vote buying. Young is guilty of vote buying if voters are being paid to vote, Young knows they are being paid to vote, and Young assists in paying those voters to vote. A vote-hauling instruction would only confuse the jury and could have led to Young being convicted on federal vote buying charges for violating Kentucky's vote-hauling statute.

Next, Young's argument that the willful blindness instruction was reversible error does not raise a substantial question of law or fact for the reasons discussed above. Even if the instruction was given in error, it was, at most, harmless error. *Beaty*, 245 F.3d at 622.

Accordingly, because Young's and Johnson's appeals do not raise a close question of law or fact, the Court **ORDERS**:

1. Johnson's Motion for Release Pending Appeal [DE 100] is **DENIED**; and
2. Young's Motion for Release Pending Appeal [DE 110] is **DENIED.**

Dated this 21st day of August, 2012.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge